## WILLIAM ASHLEY *versus* HARLOW PEASE.

Where a grant is made of a water power, in terms, and the privilege itself is the principal subject, if it is left in doubt, whether it is a grant of a sufficient quantity of water to carry a particular kind of mill, making reference to such mill to indicate and measure the quantity of water power intended to be conveyed, or whether it is a grant of the use of the water to carry such particular kind of mill only, the former construction is to be more favored, because, in general, it is most beneficial to the grantee without being more onerous to the grantor, and because such construction is most favorable to the general interests of the community.

The plaintiff, being the owner of land on a stream of water, and of a water privilege, granted by indenture a parcel of the land, with all the buildings thereon occupied by the grantee for a fulling mill and dyeing house, and the appurtenances and privileges thereunto belonging, and covenanted, that whenever there should be a sufficiency of water to supply the mills standing on the dam, he would permit the grantee to draw from the floom " so much water as may be necessary to carry and supply the fulling mill of the grantee, which now stands or which may hereafter stand on the same spot," but that " when there is not a sufficiency of water for the purposes and uses aforesaid, then the grantee, his heirs and assigns, are to draw water from the said floom for the use of the said fulling mill *or mills*, twelve hours successively in the twenty-four," [or as it was expressed in the other part of the indenture," for the uses of his or their fulling mill, as aforesaid twelve hours," &c.,] and that he would maintain fifteen sixteenth parts of the dam ; and the grantee covenanted, that he would maintain the other sixteenth part of the dam, and that he would never use his fulling mill or " any other mill standing in the same place, so as in any manner or way to interfere with or obstruct the going of said saw mill of the plaintiff or any mill which may hereafter stand in the same place.

except by drawing water from said floom, as aforesaid." At the time of the execution of the indentures, the business of fulling cloth at such fulling mill had never required the use of the water for more than twenty weeks yearly. It was *held*, that this was not a grant of a water power to carry a fulling mill, to be applied by the grantee, at his pleasure, to any works requiring an equal amount of power, but that the use of such water power was restricted thereby to the purpose of working a fulling mill only.

THIS was an action on the case for diverting water from the plaintiff's mills.

By an agreed statement of facts it appeared, that on January 30, 1809, the plaintiff being the exclusive owner of the land on both sides of a stream of water in Sheffield, together with the whole of a water privilege thereon, entered into a contract with Allen Pease, the father of the defendant, in pursuance of which an indenture of that date, of two parts, differing a little in their terms, was executed by those parties.

By one of these instruments, the plaintiff, in consideration of the covenants therein contained on the part of Allen to be performed, and in consideration also of $400 paid by him to the plaintiff, granted and conveyed to Allen a certain parcel of such land, together with all the buildings thereon standing occupied by Allen for a fulling mill and dyeing house, to have and hold with the appurtenances and privileges thereunto belonging, to Allen, his heirs and assigns, and covenanted with Allen, his heirs and assigns, that he, his heirs, executors and administrators, will, at all times, when there is a sufficiency of water in the pond occasioned by the aforesaid dam to carry and supply the uses of all the mills which now are standing, or hereafter may in their places be standing, on said dam, suffer and permit the said Allen, his heirs and assigns, to draw from the aforesaid floom so much water as may be necessary to carry and supply the fulling mill of the said Allen, which now stands or which may hereafter stand on the same spot, on the tract of land above described and granted ; but when there is not a sufficiency of water for the purposes and uses aforesaid, then the said Allen, his heirs and assigns, are to draw water from the said floom for the use of the said fulling mill, *or mills*, twelve hours successively in the twenty-four, and no more." In the same instrument, Allen covenants, that neither he, nor his heirs and assigns, shall " ever use or occupy the fulling mill of the said

Allen, which now stands on the before granted and described tract of land, nor any other mill or buildings which may hereafter stand in the same place, so as in any manner or way to interfere with or obstruct the going or working the said saw mill of the said William, or any other saw mill or other building, which the said William, his heirs or assigns, may hereafter build in the same place, or in any manner so as to injure said saw mill or other building." The parties further mutually covenanted with each other, that they would always maintain and keep in repair such dam and floom, or others in their places, "in the manner and proportion following, viz. the said William is to maintain and keep in repair fifteen sixteenth parts of said dam and the whole of said floom which does not stand against the said fulling mill of the said Allen, and the said Allen is to maintain and keep in repair the other one sixteenth part of said dam and the whole of said floom which stands against his said fulling mill at his own expense."

In the other part of the indenture, the sum of $200 is alleged to have been paid by Allen to the plaintiff as a part of the consideration of the grant ; and the provision in regard to the use of the water by the grantee is in the following terms : "And furthermore the said William, for and in consideration above mentioned, doth hereby, for himself, his heirs," &c. "covenant and agree to and with the said Allen, his heirs," &c. "that he, the said William, his heirs," &c. "will and shall at all times, when there is a sufficiency of water in the pond caused by said dam to carry and supply the uses of all the mills (said fulling mill included) on said dam, or which may hereafter stand in their places, suffer and permit the said Allen, his heirs and assigns forever, to draw from the aforesaid floom in the said dam, so much water as shall be necessary to carry the fulling mill aforesaid of the said Allen, and any fulling mill, which may hereafter stand in the same place. But when there is not a sufficiency of water for the purposes and uses aforesaid, then the said Allen, his heirs and assigns, are to draw water from said floom for the uses of *his or their fulling mill, as aforesaid*, twelve hours successively in the twenty four, and no more." In this instrument, Allen covenants, that he and his heirs, &c. will never "use or work the said fulling mill, nor

any other mill standing in the same place, so as in any manner or way to interfere with or obstruct the going of said saw mill of the said William, or any mill which may hereafter stand in the same place, except by drawing water from said floom, as aforesaid." There was a mutual covenant to keep the dam and floom in repair, or others in their places, in the manner and proportion above mentioned. At the end of the instrument was a *nota bene* setting forth, that " the word, *fulling*, in particular, and several other words, were interlined before the execution hereof."

It was admitted, that the defendant, who was the grantee of his father, Allen, had no other right of taking the water than such as was granted to Allen by this indenture, and that the plaintiff had all the rights which he had in 1809, except such as were then conveyed to Allen ; that the defendant erected a carding machine in the building occupied by him on the land so granted to him, and had used the water of the stream for the purpose of working such carding machine as well as the fulling mill, but not at one and the same time ; that the plaintiff was the owner of several mills and machines, as stated in the declaration, and that his ground is favorably situated for the erection of several manufacturing establishments ; that previously to the erection of the defendant's carding machine the plaintiff had one, the net income of which was worth $75 a year, and that since the erection of the defendant's machine the plaintiff's had not been used ; that the defendant, since the erection of his carding machine, had been accustomed to use a greater quantity of water by the year, than had ever been used for the purposes of the fulling mill ; that the business of fulling cloth at the fulling mill had never required the use of the water for a greater period than twenty weeks yearly, but that the defendant had used the water for the carding machine during nearly the whole of the year ; that the carding machine had, at all times, been propelled by the fulling mill wheel, and required no greater quantity of water than would have been required for the fulling mill ; that at the time of the execution of the indenture a fulling mill building was standing on the land conveyed, which had never been used more than twenty weeks in the year, nor for any other purpose than for a fulling mill ; that previously

<div style="margin-left:margin">Ashley
<br>*v.*
<br>Pease.</div>

to the commencement of this action the defendant had pulled the same down, and erected another on the same site ; and that the plaintiff's interest in the land and privilege, at the time of the execution of the indenture, was of the value of $ 4,500.

It was further agreed, that such part of the above statement of facts as would have been inadmissible in evidence on a trial of this case by a jury, should be disregarded by the Court.

<div style="margin-left:margin">*Sept 20th.*</div>

*C. A. Dewey, Barnard* and *W. G. Bates,* for the plaintiff Two questions arise upon the construction of this indenture ; 1. Whether Allen, the grantee, was limited in the use of the water to a fulling mill, or could apply the same quantity of water to other purposes ; and 2. If he could use the water for other purposes, whether he could take more water *by the year,* than would carry a fulling mill twenty weeks, or so long as would be required by a fulling mill. There is a distinction between deeds poll and indentures, in regard to the rules by which they are to be construed. In a deed poll an ambiguity is to be construed against the grantor ; but not so, in an indenture, because both parties have given their consent to the words.

The defendant is limited, in the use of the water, to a fulling mill only. The words of the indenture, the situation of the parties, the uncertainty as to the quantity of water granted, and the usage by the grantee, show that it was intended to limit the quantity by the use to which it was to be applied. *Strong v. Benedict,* 5 Connect. R. 221 ; *Livingston v. Ten Broeck,* 16 Johns. R. 14 ; *Biglow v. Battle,* 15 Mass. R. 313 ; *Luttrel's case,* 4 Coke, 86 ; *Robert Mary's case,* 9 Coke, 113 ; Jac. Law Dict. *Common of Estovers ;* Cruise's Dig. *tit.* 24, *Way,* §§ 15, 16 ; *Howell v. King,* 1 Mod. 190 ; *Lawton v. Ward,* 1 Ld. Raym. 75 ; *Bullen v. Runnels,* 2 New Hamp. R 255 ; *Johnson v. Rand,* 6 New Hamp. R. 22 ; *Dygert v. Matthews,* 11 Wendell, 35 ; *Sprague v. Snow,* 4 Pick. 54 ; *Hatch v. Dwight,* 17 Mass. R. 289 ; *Sumner v. Williams,* 8 Mass. R. 214.

Such being the intention of the parties, there is nothing in the general grant, of the privileges and appurtenances, to counteract the effect. *Tyler v. Hammond,* 11 Pick. 193 ; *Dunlap v. Stetson,* 4 Mason 366 ; *Provost v. Calder,* 2 Wendell, 517 ; *Sprague v. Snow,* 4 Pick. 54 ; Back. Abr. *Grant, I, 2*

In Maine and Massachusetts, grants and devises of lands "for the use of schools," or "for the use of the ministry," have been held to create conditional estates. *Porter v. Griswold*, 6 Greenleaf, 430. If in such cases, those words have been held to limit an estate to a particular purpose, the same words should have a corresponding effect in relation to the incidents of real estate. Co. Lit. 204 *a*; *Portington's case*, 10 Coke, 42; *Browning v. Beston*, 1 Plowd. 131.

*Bishop* and *Hall*, for the defendant, cited *Cutler v. Tufts*, 3 Pick. 272; *Cooper v. Smith*, 9 Serg. & R. 26; *Strickler v. Todd*, 10 Serg. & R. 63; 3 Kent's Comm. 356; *Biglow v. Battle*, 15 Mass. R. 313; *Saunders v. Newman*, 1 Barn. & Ald. 258; *Stiles v. Hooker*, 7 Cowen, 263; *Ingraham v. Hutchinson*, 2 Connect. R. 584; Com. Dig. *Grant*, *E* 9; Co. Litt. 121 *b*, 122 *b*; *Doane v. Broad Street Association*, 6 Mass. R. 332; *Story v. Odin*, 12 Mass. R. 157.

SHAW C. J. delivered the opinion of the Court. The decision of the present case must depend exclusively upon the construction of the contract entered into by the plaintiff, with Allen Pease, the defendant's father and grantor, on the 30th of January, 1809. It is conceded, that up to that time, Ashley, the plaintiff, was the exclusive owner of the land on both sides of the stream, together with the whole of the water privilege, that he retains all the rights incident to such ownership to the present time, except such as he parted with by this contract, and that Harlow Pease, the defendant, has now all the rights which were conveyed to his father by that contract. Nor will the doctrine relative to the legal rights of riparian proprietors, go far to aid the construction of the contract, because admitting, that by the terms of the grant of land, the grantee became such a proprietor, that is, an owner of land bounding on the stream, (which is denied,) such general right is limited, restrained, and regulated by the terms of the contract. Presumptions are resorted to, as a means of ascertaining the intentions of parties, whenever they have not expressed them with sufficient clearness. But *conventio legem vincit*. Genera ownership embraces the right to use the whole of the water power, to every extent and for every purpose to which it can be legally used. If having thus the unlimited *jus disponendi*,

the owner chooses to grant, and the grantee chooses to accept a grant, either of the land without the water privilege, or this without the land, or a qualified and limited right to the water power, there is no legal impediment to such a grant, nor will it be controlled by the general presumption in relation to the rights of riparian proprietors. That the right intended by the parties to be so granted and accepted, *was* limited and qualified, we think is manifest from the general tenor of the contract, and is especially confirmed by one of the covenants, in which the grantee stipulated, that neither "he, the said Allen, nor his successors or assigns, shall or will ever use, occupy, or work the said fulling mill, nor any other mill standing in the same place, so as in any manner to interfere with or obstruct the going of said saw mill of said William, or any mill which may hereafter stand in the same place, except by drawing water from said floom as aforesaid." The words "obstruct" and "interfere with," if they stood alone, might be understood to mean the interposition of some direct impediment. But the exception explains them, and shows what was intended. How would drawing water from the floom obstruct or interfere with the going of the plaintiff's mill? Surely in no other way, than by diminishing the water power intended to carry it. Thus explained, the stipulation is, that the grantee will not obstruct the plaintiff's mills, by using and diminishing the water power, except by drawing water from the floom, as aforesaid, that is, as far as the right is granted by the foregoing contract. The effect is, to limit the right of using the water to that granted ; and then the question recurs, what is the nature and extent of the right thus conferred.

One other observation it may be proper to make, before proceeding to the direct question, on the construction of the contract. Here two instruments of the same date were executed by the parties, differing a little in their terms. These were manifestly executed at one and the same time, and relate to the same subject matter, and they must therefore be taken and construed together ; every stipulation, covenant, and clause contained in either may be resorted to, to ascertain the meaning of the parties. The effect will be, that general words in one, will be limited and qualified by more special stipulations in the

other. If a general right is granted in one, and this is restrained by the provisions in the other, the qualified right only will be conferred. When the provisions are different but not repugnant, according to the general rule, the words of grant, covenant, or acknowledgment, would be taken most strongly against the party using them, and the largest right, which the construction of either instrument would admit, would be taken to be conferred on the grantee, convenantee, or party benefited. To illustrate this by an instance in these two instruments. One states the consideration to be $400, the other $200. These, though various, are not repugnant. Supposing the question were upon the actual consideration paid, and to be proved by these deeds, it would be taken most strongly against the party acknowledging the receipt of the money, and prove that the larger sum, $400, was paid.

It may be proper to advert to some rules of construction, applicable to the grants of water powers. In general, where a mill-seat is granted, that is, land on a stream on which mills are actually situated, or where it appears by the grant, that the object is to erect mills thereon, the soil is the principal subject of the grant; the right to use it for any and all mill purposes at the pleasure of the owner, and to change those uses at pleasure, follows as incident to the ownership; and words of description of the water power, such as the right to use the stream, for the saw-mills and grist mills, &c., situated, &c., are not to be considered as restrictive of the more general right, incident to the ownership.

Again, where the grant is of a water power, in terms, described, and where the privilege itself is the principal subject, if it is left in doubt, whether it is a grant of a sufficient quantity of water to carry a particular kind of mill, making reference to such mill to indicate and measure the quantity of water power intended to be conveyed, or whether it is a grant of the use of the water to carry such particular kind of mill only, the former construction will be more favored, because in general it is most beneficial to the grantee, by allowing a latitude of choice in the use he shall make of it, without being more onerous to the grantor, and therefore most consistent with the general rule applicable to the construction of grants, and because such con-

struction is most favorable to the general interests of the community, by encouraging enterprise and promoting public improvements. It is better adapted to the growing and changing wants, and the ever varying pursuits of an active community.

Still, for the reasons already given, it is competent for the owner of the whole of a mill privilege to grant a part, and any part which he pleases, and for the grantee to accept such part, and of course it is competent to grant the right to use water for the purpose of carrying a particular species of mill and no other. And the question in this case is, whether it was a grant of water enough to carry a fulling mill, to be applied by the grantee to carry a fulling mill, or an oil-mill, or other works requiring equal power at his pleasure, or whether it was a grant of a right to draw water to carry the fulling mill only, and restricted to that use. The Court are of opinion, that the latter is the true construction of this grant, and that it was intended, not to measure and limit the quantity of water power, but to restrict the use of the water to the actual purpose of carrying a fulling mill, either the one then standing or some other fulling mill to be erected at the same place. This seems to us to be the natural and obvious import of the words of the grant used in the contract, and this construction is confirmed by all the other provisions of the contract and by all the attending circumstances.

Ashley covenants for himself, and his heirs, with Pease, his assigns, &c., that they will, at all times, when there is a sufficiency of water to supply all the mills now standing, or which may be standing in their places, suffer and permit Pease and his assigns to draw so much water as may be necessary to carry and supply the fulling mill of Pease which now stands, or which may hereafter stand on the same spot, but when there is not such sufficiency of water, Pease and his assigns are to draw from the floom, for the use of the fulling mill *or mills*, twelve hours successively in the twenty-four hours and no more. The clause is nearly the same in the other instrument, except that the words " *or mills* " are not inserted, but the language is that Allen and his assigns are to draw water from the floom, for the uses of his or their fulling mill as aforesaid, twelve hours, &c. This was a perpetual grant, not therefore limited to the identical mill then standing, which must decay, but any and all

mills subsequently to be erected for the same purpose, on the same spot. Hence the use of the plural, " *mills.*" Again, from the proportions, in which the parties were to contribute to the maintenance of the dam, it is obvious, that the amount of water power granted to Pease, compared to that of the whole, was small, viz., as one to fifteen. But the right, when the water was insufficient to draw for twelve hours in twenty-four, which might be the twelve working hours, a sufficient quantity of water to carry any fulling mill of any size, and that quantity adapted and applied to other uses, as to a manufactory, would seem to constitute a much larger quantity of the power than was contemplated. At the time that grant was made, it may have been contemplated, that a fulling mill would probably be employed only to full the home-manufactured cloth for customers in the vicinity, and would, therefore, be carried on upon a small scale, for a part of the year only, and that part when there was a superabundant supply of water. Still if the grantee chose, using it only as a fulling mill, to extend his work, and to run it the whole year, he had a right so to do. There was no restriction of that use. Of this the grantor took his chance, which he might consider that he run no great risk in doing, if confined to that use. This leads to another remark, which is, that it could hardly be intended to measure the quantity of water power granted, because it was, of itself, so uncertain a one. The use would be governed by the amount of custom, the number of weeks that such custom would require the use of the mill in each year, and the season of the year. If it had been intended to operate as a grant of water power sufficient to carry a fulling mill of any size and of any number of fulling stocks, for twelve hours of the day through the year, it would probably have been expressed in somewhat different terms. And yet it seems difficult to limit it to any amount short of this, consistently with the claims of the defendant.

On the best consideration we have been able to give to this grant, the Court are of opinion, that it was the grant of a right to use the water for driving the fulling mill, and for no other purpose, and that the use of it to carry a carding machine, was unauthorized, and has subjected the defendant to an action.